UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

*Plaintiff*,

v.                                                                  Case No.  SA-21-CR-00193-JKP

**(1) JAMEEL ALEXANDER BROWN,**

*Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jameel Alexander Brown's Motion to Suppress Evidence. *See* ECF No. 32. The Government filed a Response (ECF No. 37) and, on August 10, 2023, the Court held a hearing on the motion. The Court admitted all evidence submitted by the parties for the purpose of resolving the motion. Brown filed a supplement containing the incident detail report which the Court also admits into the record. *See* ECF No. 43-1. After due consideration of the parties' briefings, the evidence, and the applicable law, the Court **DENIES** the motion. *See* ECF No. 32.

### BACKGROUND

On December 2, 2020, SAPD Officer David Lohaus was dispatched to Canyon Parke Drive in San Antonio, Texas, in the Western District of Texas. The original dispatch advised the officer to go to Canyon Parke Drive, San Antonio, Texas 78232 for a mail theft in progress. The dispatch was based upon an eyewitness that called in at approximately 3:15 a.m. reporting that he had seen someone tampering with the mailboxes located near the residence at which he was

staying. The witness provided his name, address, and phone number to the police at the time of the call. After Officer Lohaus was dispatched, and shortly before arriving at the location, the witness called again, stating that the male he had observed earlier had returned. At that time, the witness gave a physical description of the male, stating he was six feet tall, with an afro. The witness also reported the male was driving a four-door sedan.

At approximately 3:20 a.m., Officer Lohaus arrived on scene and observed the Defendant reaching into a block of 32 mailboxes in close proximity (approximately two blocks away) to the witness's location. *See* Government's Exhibit 2 (Lohaus Dash Cam) at 4:53. The Defendant is a black male and was dressed in a black jacket and had an afro. *Id*. The Defendant's vehicle, a 2019, four-door Dodge Charger, was parked adjacent to the mailbox block and was running with its headlights on. *Id*. No other individuals were observed outside in the general vicinity at that time. *See id*. Officer Lohaus activated his overhead lights on his patrol vehicle and parked next to the mailbox block. *Id*. at 4:59. In his full SAPD uniform, Officer Lohaus then approached the Defendant and asked him to put his hands up and step over to his patrol car. *Id*. at 5:11. Officer Lohaus then detained the Defendant in handcuffs and placed him in his patrol vehicle to determine if there were additional individuals in the Defendant's vehicle. *Id*. at 6:08.

Officer Lohaus then looked into the Defendant's vehicle through the windows and observed a bag full of loose mail on the front passenger floor, an unopened package on the front passenger seat, and a handgun wedged between the front seat and center console. *See* Government's Exhibit 1 at 1; Government's Exhibit 2 at 7:35. All of this was visible in plain view through the windows and windshield of the car with the doors closed. Officer Lohaus also observed a set of mailbox keys on top of the mailbox block. *See* Government's Exhibit 2 at 7:26 (he mentions them at 8:10). Officer Lohaus seized the mail evidence and the weapon from the

car and later, during an inventory search, found a rifle in the trunk of the Defendant's vehicle. *See* Government's Exhibit 1 at 1.

The Defendant was arrested and charged with Felon in Possession, Possession of Marijuana, and Criminal Mischief. *Id*. The postal inspector was also notified of the mail case during the detention. *Id*. The Defendant's case was later federally adopted, and the Defendant was indicted for Theft of Mail pursuant to 18 U.S.C. § 1708 and Felon in Possession pursuant to 18 U.S.C. § 922(g)(1).

## BURDEN OF PROOF

The Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United State v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011) (*quoting* U.S. Const. amend. IV). The exclusionary rule, a judicially created deterrence measure, provides that evidence obtained by an unreasonable search or seizure generally may not be used as evidence of guilt at trial. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Weeks v. United States*, 232 U.S. 383, 393 (1914). Warrantless searches and seizures are *per se* unreasonable subject to certain narrow exceptions. *Cotropia v. Chapman*, 978 F.3d 282, 286 (5th Cir. 2020) (quoting *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)). The government bears the burden of showing an exception applies. *United States v. Roberts*, 612 F.3d 306, 309 (5th Cir. 2010) (quoting *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005)).

One exception permits officers to conduct brief investigatory stops based on reasonable suspicion that the person is engaged in criminal activity or wanted in connection with a completed felony. *United States v. Hensley*, 469 U.S. 221, 229 (1985); *Terry v. Ohio*, 392 U.S. 1, 27–31 (1968); *see also United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc).

A seizure "must be 'justified at its inception.'" *United States v. Thomas*, 997 F.3d 603, 609 (quoting *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004)). Reasonable suspicion therefore "must exist *before* the initiation of an investigatory detention." *Ibid.* (quoting *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020)).

Reasonable suspicion "is a low threshold, requiring" only a "minimal level of objective justification." *United States v. Castillo*, 804 F.3d 361, 367 (5th Cir. 2015) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). But it "must be founded on specific and articulable facts rather than on a mere suspicion or 'hunch.'" *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *United States v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993)). Reasonable suspicion "takes into account the totality of the circumstances—the whole picture." *Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014)).

"Whether an officer has reasonable suspicion to stop is answered from the facts known to the officer at the time." *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008). Relevant facts and considerations may include a description of a suspect, a suspect's location and proximity to known or reported criminal activity, the timeliness of information or the stop, a suspect's behavior, and the officer's experience. *See, e.g., Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Thomas*, 997 F.3d at 610–11; *McKinney*, 980 F.3d at 491–95; *Vickers*, 540 F.3d at 361. Facts that appear innocent when viewed in isolation can constitute reasonable suspicion when viewed collectively. *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

A physical description of a suspect known to officers must be sufficiently specific and particularized to justify an investigatory stop. *See, e.g., Goodson v. City of Corpus Christi*, 202 F.3d 730, 736–38 (5th Cir. 2000). "*Terry* does not authorize broad dragnets … Without more, a description that applies to large numbers of people will not justify the seizure of a particular

individual." *United States v. Street*, 917 F.3d 586, 594 (7th Cir. 2019) (citing *United States v. Turner*, 699 A.2d 1125, 1128–29 (D.C. 1997)); *see also Reid v. Georgia*, 448 U.S. 438, 441 (1980).

## DISCUSSION

The parties agree Officer Lohaus seized Brown when Officer Lohaus pulled up and activated his emergency lights, a show of authority to which Brown submitted. The question before the Court is whether the seizure was justified by Officer Lohaus' reasonable suspicion that Brown was engaged in criminal activity. Brown argues the caller's physical description of the suspect—a male, approximately six feet tall, with an afro, driving a four-door sedan—was insufficient to establish reasonable suspicion. Indeed, the caller's physical description, though some evidence of the suspect's identity, was not in and of itself "sufficiently specific and particularized" to justify Brown's seizure. *Goodson*, 202 F.3d at 736–38. However, taking into account the "totality of the circumstances," the Court finds Officer Lohaus did have reasonable suspicion to seize Brown. *Glover*, 140 S. Ct. at 1191.

As noted above, the suspect's physical description is just one factor courts consider when determining whether officers had reasonable suspicion to seize a suspect. Other factors include: (1) a suspect's location and proximity to known or reported criminal activity; (2) the timeliness of information or the stop; (3) a suspect's behavior; and (4) the officer's experience. *Wardlow*, 528 U.S. at 124. In this case, all factors support a finding that Officer Lohaus had reasonable suspicion to believe Brown was the suspect he was seeking. Officer Lohaus encountered Brown approximately two blocks from the caller's location, in close proximity to the reported criminal activity. Furthermore, the incident detail report reveals Officer Lohaus was on the scene within five minutes of being dispatched. When he arrived on the scene, Officer Lohaus encountered

Brown engaged in suspicious activity, reaching into a mailbox. Finally, Officer Lohaus, a veteran police officer who has since retired, has significant experience. These factors, taken together with Brown fitting the suspect's physical description, support the Court's finding that Officer Lohaus had reasonable suspicion to believe Brown was the suspect. The cases Brown cites are inapposite because they deal with limits of a suspect's physical description alone. *See United States v. Alvarez*, 40 F.4th 339, (5th Cir. 2022); *United States v. Jones*, 619 F.2d 494 (5th Cir. 1980).

Brown argues that, for all Officer Lohaus knew, Brown could have been at the mailbox checking his own mail. Facts that appear innocent when viewed in isolation, however, can constitute reasonable suspicion when viewed collectively. *Arvizu*, 534 U.S. at 277. Given the totality of the circumstances, Brown's innocent explanation seems unlikely. Officer Lohaus was responding to a recent report of criminal activity that was likely still ongoing, two blocks from the caller's location. Furthermore, he had several unique physical descriptors to identify the suspect. The caller described a man, approximately six feet tall, with an afro, driving a four-door sedan, breaking into a block of mailboxes. When he arrived on the scene, Officer Lohaus found Brown, a man, approximately six feet tall, with an afro, next to a running four-door Dodge Charger sedan, reaching into a block of mailboxes. Brown argues Officer Lohaus could not have confirmed Brown's physical description at night; however, the Court reviewed the video evidence and Brown's unique hairstyle and tampering with the mailbox was evident even in the darkness. Moreover, the encounter occurred at around 3 a.m., when few people check their mail. Finally, the video evidence shows Brown was the only person on the street who Officer Lohaus encountered after being dispatched. Based on these factors, the Court finds Officer Lohaus had

reasonable suspicion to believe Brown was the suspect he was seeking, and the warrantless seizure was justified at its inception. *Thomas*, 997 F.3d at 609.

## CONCLUSION

For the reasons discussed herein, the Court **DENIES** Defendant Jameel Alexander Brown's Motion to Suppress Evidence. *See* ECF No. 32.

It is so ORDERED.
SIGNED this 29th day of August, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE